[Crim. No. 14021. First Dist., Div. One. Dec. 17, 1975.]

In re ROBERT ELLISON KUBLER on Habeas Corpus.

**COUNSEL**

Benjamin R. Winslow, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Respondent.

**OPINION**

**ELKINGTON, J.**—We construe Robert Kubler's petition for a writ of habeas corpus as contending that his superior court attorney, the public defender, withdrew "a crucial defense from the case" by failing to enter a plea of "Not guilty by reason of insanity," as permitted by Penal Code section 1016, subdivision 6, thereby rendering Kubler's trial representa-

tion constitutionally inadequate. (See *People* v. *Najera,* 8 Cal.3d 504, 516 [105 Cal.Rptr. 345, 503 P.2d 1353].)

Kubler, having waived trial by jury, was found guilty by the court of (1) assault upon one known by him to be a police officer (Pen. Code, §§ 240, 241), a felony; (2) battery upon one known by him to be a police officer (Pen. Code, §§ 242, 243), a felony; and (3) exhibiting a deadly weapon (Pen. Code, § 417), a misdemeanor.

Evidence disclosed at Kubler's preliminary hearing and in the superior court, and otherwise readily available to the public defender, follows.

Kubler, 45 years of age, had several times been a patient in a mental institution. He entered a City of Eureka supermarket to purchase "cupcakes." As he reached for such a piece of pastry someone called out "check" or "Czech." This caused him, he later said, to become very angry as such terminology, and certain electronic methods, had repeatedly been used to "disturb [his] mind." He "threw the cupcake back on the counter and swore and . . . left the store." He returned in a moment with a packsack and duffel bag and stepped up to a male checkout clerk. According to the clerk the following then occurred: "[H]e said, 'You . . . you can't treat me like this.' And he said that he was going to cut me up and he was going to cut my kids up. And at first I didn't notice the knife, then he had his hand on the handle of the knife and the other hand on the blade of the knife and he put it on the back edge of the counter and held it at the bottom of the counter." Kubler did not raise the knife or point it at anyone. He then said: "Go ahead and call the cops. They can't do anything to me. They won't do anything to me." The police were called and Kubler placed the knife in his duffel bag, and waited outside the market for them. He kept repeating, "You can't treat me like this." Two cars with police officers arrived after about five minutes, whereupon the clerk pointed Kubler out to them as the man with the knife. An officer approached Kubler and asked him to take his hands out of his pockets. This was not done, so preparatory to a weapons search, the officer touched Kubler's arm. This brought about a blow to the officer's face. There followed what the clerk described as "a big rassling match." "Kubler was kicking and swinging his body and arms, and it ended up with about four or five cops to get him down, finally."

Charged with the three offenses of which he was later convicted, Kubler was arraigned in the municipal court. The judge there presiding

entertained a doubt as to Kubler's present sanity and "certified [him] to the Superior Court," for determination of that issue. Kubler refused to cooperate in examinations by two court-appointed psychiatrists. Nevertheless, one of those doctors reported: "My diagnostic impression based on this rather brief and incomplete evaluation is probable paranoid schizophrenia, chronic, moderate to severe." The second psychiatrist reported that the scant "information provided indicates to me that he is very defensive but I don't know if he can assist his counsel in a rational manner. . . . Perhaps the best that can be said is that there is no evidence to me that he does not understand the nature of the proceedings nor that he cannot assist counsel in his defense."

Kubler was found to be presently sane and was remanded to the municipal court where he was held to answer for the charged offenses.

Back in the superior court Kubler, represented by the public defender, entered only a plea of "not guilty" to the charges. But at the trial such defense as was offered tended to establish that at the time of the offenses Kubler was mentally disturbed and suffering from psychotic hallucinations. We quote some of this evidence which was elicited by the public defender from Kubler:  "Q. And did you stop in at Casey's Market that evening?  A. Yes.  Q. What was your purpose in going in there?  A. I went there to buy cupcakes. . . .  Q. Did you get as far as the cupcake area?  A. Yes.  Q. Did anything unusual happen while you were in that area?  A. Yes. After about a minute at the counter I, at the instant I reached and touched the cupcake I selected, a woman said 'Check.' I became very angry at this because I felt that the store was using an electronic method to disturb my mind, a method that's been used every day since August 1968. Similar methods have been used every day since that time, and I felt that was a method to harass me or to disturb my mind, and I threw the cupcake back on the counter and swore and I left the store. Then I returned with a knife and threatened the grocer approximately the way he mentioned. The reason for that action was because I felt, as I said, that the store was taking part in this method to disturb my mind. It made me very angry.  Q. Has that method been used on you in the past?  A. Oh, yes. From August 1968, every day, including in this jail and frequently back to 1960.  Q. Okay. Is it always somebody speaking over a microphone—  A. Frequently. I've heard disturbing things on the communication system in jail.  Q. Does it happen in other manners, as well?  A. Oh, yes. People are instructed to insult me throughout the day.  Q. People are instructed to insult you?

A. Yes. Q. How are they instructed? A. Well, they must be receiving orders from a secret sound system. Q. Have you noticed wherever you've been throughout the country? A. Oh, yes. Q. And this is what prompted you to take the action you took that evening; is that right? A. Yes. Q. And did you come back into the store with a knife then; is that correct? A. Yes, I did. Q. And were you holding it in approximately the manner in which Mr. Robinson demonstrated here today? A. Yes, at first. Then I held it by the handle. Possibly he didn't see it. The change. I threatened him then left the store and returned the knife to my pack. Then I came into the store again, and I asked, I heard someone mention the police in the store as I was leaving, I came back in and asked, 'Did you call the police?' They said yes. So I went outside and I waited for the police car because I had two packs and I saw no reason in walking away. I wouldn't have been able to walk away from the scene, and they arrived after a short time. Q. How many officers arrived initially? A. Four or five. . . . Sgt. Millsap said almost inaudibly, 'Are you going to come peacefully?' And immediately came toward me and grabbed my right hand. Q. Did he make contact with your hand then? A. Yes. Q. . . . What happened after that? A. Well, the other policemen were following closely behind him. Someone held my left arm and then I began resisting. Q. Had anyone told you you were under arrest at that point? A. No. . . . Q. What happened when you say you began to resist? How did you resist? A. I started to struggle trying to pull both my left and right arm away from the officers. Q. Were you successful? A. No. All the other officers then grabbed me, and I just kept struggling to get free. Q. And were more and more officers getting their hands on you as this went on? A. Yes. I resisted and they got me to the ground and held me down and handcuffed me."

As pointed out, on his not guilty plea Kubler was found guilty by the court on each of the three charges lodged against him. There being no plea of not guilty by reason of insanity, no trial was held, or judicial determination made, on such an issue.

*Following* Kubler's conviction the public defender for some reason caused him to be examined by the county "Director of Mental Health." Here again Kubler was "guarded in his responses" and "reluctant" in his cooperation. Nevertheless that psychiatrist reported:

"In my opinion, there can be no doubt that this man has a severe, chronic mental illness which is characterized by a fixed paranoid

delusional system, including hallucinations, delusions, suspiciousness and seclusiveness. Because of his potential for violence in reaction to the delusions and hallucinations, he should be placed in a controlled, supervised environment where treatment is available for his mental illness. . . .

"My psychiatric diagnosis is: Schizophrenia, paranoid type, chronic."

Kubler was thereafter sentenced to state prison on each of the three charges of which he was found guilty; the sentences were (by operation of law; see Pen. Code, § 669, 1st par., last sentence) to run concurrently with each other.

The apposite rule was succinctly stated in *People* v. *Najera, supra,* 8 Cal.3d 504, 516, as follows: "It is now well established that if trial counsel's lack of diligence or competence results in withdrawing a crucial defense from the case, reducing the trial to a farce or sham, the defendant has not had the 'effective' assistance of counsel to which he is entitled under the Sixth Amendment."

▋ Prior to Kubler's plea of not guilty in the superior court, his attorney was possessed of abundant information from which a trier of fact might reasonably conclude that his client was insane at the time of the charged offenses. Kubler's repeated explanations of the offenses, if true, established profound delusions and hallucinations. This was closely corroborated by his history of mental disturbance, and the bizarre nature of his conduct in relation to the charged offenses. A court-appointed psychiatrist's evaluation of him was "probable paranoid schizophrenia, chronic, moderate to severe."

" 'It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled.' " (*People* v. *McDowell,* 69 Cal.2d 737, 746 [73 Cal.Rptr. 1, 447 P.2d 97]; *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].)

Here Kubler's attorney had apparently not investigated such available defenses of fact and of law. Or if they had been investigated, and the applicability of a not guilty by reason of insanity plea had gone unrecognized, the inadequacy of Kubler's representation would seem even greater.

This inadequacy was compounded when counsel, without having entered an insanity plea, endeavored at the trial to establish that Kubler had acted under psychotic delusions or hallucinations, a defense which was not even before the court. At least at that point a proper concern for his client would impel competent and conscientious counsel to seek leave to proffer an additional plea of not guilty by reason of insanity. Such a "plea is not barred after the commencement of trial," where good cause is shown. (*People* v. *Boyd,* 16 Cal.App.3d 901, 908 [94 Cal.Rptr. 575].)

Moreover, when Kubler was finally arraigned for judgment and sentence the attorney then, and probably sooner, was aware of the report of the county's director of mental health. As pointed out, that document described Kubler as being controlled by a "severe, chronic mental illness which is characterized by a fixed paranoid delusional system, including hallucinations [and] delusions, . . ." The stated diagnosis was "Schizophrenia, paranoid type, chronic." It recited that his *"potential for violence [was] in reaction to [his] delusions and hallucinations, . . . "* (Italics added.) It is incomprehensible that even at that point counsel did nothing in an attempt to rectify his previous inadequate representation of Kubler.

We conclude that Kubler's superior court counsel's lack of diligence or competence resulted in withdrawing a crucial defense, i.e., the defense of insanity, from the case. The trial was reduced to a farce or sham, and Kubler has not had the effective assistance of counsel to which he was constitutionally entitled. (See *People* v. *Najera, supra,* 8 Cal.3d 504, 516.)

We recognize that there are cases where a defendant, by choice, or his attorney for reasons of trial strategy, despite available evidence of insanity, will elect not to plead such a defense. But the record clearly establishes that this case is not one of them. In such a situation, where as here the record abounds with evidence tending to support an insanity plea, counsel would be well advised to make some record showing that its omission was intentional and knowledgeable.

■ Further deficiency in Kubler's representation appears. Apparently without objection or even comment by counsel Kubler was concurrently sentenced to state prison on each of his three convictions. The assault charge (Pen. Code, §§ 240, 241) was an offense lesser than and necessarily included within the battery charge (Pen. Code, §§ 242, 243); each concerned the one attack on Sergeant Millsap. Kubler was accordingly improperly convicted and sentenced on both charges. "If the evidence supports the verdict [or conviction] as to a greater offense, the

conviction of that offense is controlling, and the conviction of the lesser offense must be reversed." (*People* v. *Moran,* 1 Cal.3d 755, 763 [83 Cal.Rptr. 411, 463 P.2d 763].) The error is not tempered by the fact that the sentences ran concurrently with each other; such sentences, 'when improper, are reasonably calculated to place the defendant at a disadvantage "when the Adult Authority consider[s] the fixing of his term and parole date." (*In re Wright,* 65 Cal.2d 650, 653 [56 Cal.Rptr. 110, 422 P.2d 998].) This hazard would seem more likely where, as here, the superior court's commitment would indicate that Kubler had *twice* attacked a policeman. The sentence of Kubler to state prison for the *misdemeanor* Penal Code section 417 violation was also improper; this offense is punishable by imprisonment in the *county jail* not exceeding six months. (See Pen. Code, §§ 19,417.) Such a county jail sentence may, when otherwise deemed proper, be ordered to run concurrently with a state prison sentence.

The conviction of Robert Ellison Kubler in the Humboldt County Superior Court criminal action numbered 7265 is set aside. The finding of the trial court on Kubler's plea of not guilty will stand, but the cause is remanded to the superior court where he will be permitted to enter the further plea of not guilty by reason of insanity, after which appropriate proceedings will be taken.

Molinari, P. J., and Sims, J., concurred.

On January 16, 1976, the opinion was modified to read as printed above.