[Crim. No. 19099. First Dist., Div. Four. Apr. 1, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD EDWARD LUTMAN, JR., Defendant and Appellant.

**COUNSEL**

Richard L. Cooper for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart, Robert R. Granucci, Clifford K. Thompson, Jr., and R. Gordon Baker, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**POCHÉ, J.**—Ronald Lutman appeals from a judgment committing him to the Youth Authority as a youthful offender after a jury found him guilty of rape (Pen. Code, § 261) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)). His sole contention here is that the trial

court erred when, on the second day of jury selection, it refused to allow him to enter a plea of not guilty by reason of insanity.

At the time regularly set for appellant's plea, the California test for an insanity defense was the so-called M'Naghten rule: "[T]o establish a defense on the ground of insanity, it must be clearly proved that at the time of committing the act the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or as not to know that he was doing wrong." (*M'Naghten's Case* (1843) 10 Clark and Fin. 200, 210 [8 Eng. Rep. 718, 722], as quoted at 1 Witkin, Cal. Crimes, Defenses, § 136, pp. 128-129.) Apparently concluding that he could not establish a defect of cognitive capacity sufficient to invoke the M'Naghten rule, appellant, on July 7, 1978, simply entered a plea of not guilty.

On September 26, 1978, the Supreme Court filed its opinion in *People* v. *Drew* (1978) 22 Cal.3d 333 [149 Cal.Rptr. 275, 583 P.2d 1318], which rejected the M'Naghten rule and adopted instead a test based on the first subsection of a standard developed by the American Law Institute: "'A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.'" (*People* v. *Drew, supra,* 22 Cal.3d at pp. 345-348; cf., Model Pen. Code (Proposed Official Draft 1962) § 4.01.) *Drew* radically changed California law: it permits consideration not only of a defendant's ability to understand society's rules but also of his ability to exercise volitional control to conform his conduct to those rules. And it permits (through use of the phrase "lacks substantial capacity") evaluation of degrees of incapacity.

Appellant's counsel first learned of the *Drew* decision about two weeks after it was filed: sometime between the end of the court session on October 13, and 10 a.m. the next court day. He immediately sought to invoke *Drew* by adding the insanity plea. ■ The trial court found that counsel had been diligent. We agree and hold that on the basis of that showing appellant met his burden under Penal Code section 1016[1] to show "good cause" for entry of the belated plea.

---

[1]Section 1016. "There are six kinds of pleas to an indictment or an information, or to a complaint charging an offense triable in any inferior court:

"1. Guilty.

"2. Not guilty.

"3. Nolo contendere, subject to the approval of the court. The court shall ascertain

Although satisfied with appellant's diligence, the trial court also required appellant to make an additional "good cause" showing with respect to the *merits* of his insanity defense. It found that presentation insufficient. There is language in some cases indicating that such a showing is required.[2] However, we read *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673] and its two companion cases, *In re Marcario* (1970) 2 Cal.3d 329 [85 Cal.Rptr. 135, 466 P.2d 679] and *Bradshaw* v. *Superior Court* (1970) 2 Cal.3d 332 [85 Cal.Rptr. 136, 466 P.2d 680], as enunciating a policy constitutionally precluding such inquiry. These cases determined that a defendant's privilege against self-incrimination is violated by an order compelling discovery in a criminal case (e.g., names, addresses and expected testimony of witnesses a defendant intends to call at trial).

At oral argument here respondent suggested that questions from this court with respect to self-incrimination were irrelevant in that defendant waived the privilege by allowing a clinical psychologist who had examined him to testify at the "good cause" hearing. That response misses the point. The question is whether the Legislature intended to in-

---

whether the defendant completely understands that a plea of nolo contendere shall be considered the same as a plea of guilty and that, upon a plea of nolo contendere, the court shall find the defendant guilty. The legal effect of such a plea shall be the same as that of a plea of guilty, but the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of and factual basis for the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based.

"4. A former judgment of conviction or acquittal of the offense charged.

"5. Once in jeopardy.

"6. Not guilty by reason of insanity.

"A defendant who does not plead guilty may enter one or more of the other pleas. A defendant who does not plead not guilty by reason of insanity shall be conclusively presumed to have been sane at the time of the commission of the offense charged; provided, that the court may for good cause shown allow a change of plea at any time before the commencement of the trial. A defendant who pleads not guilty by reason of insanity, without also pleading not guilty, thereby admits the commission of the offense charged."

[2]For example: "[A defendant] should be required to produce evidence which would show the trial judge that there were *reasonable grounds to believe* that at the time of the commission of the crime he was legally insane" (*People* v. *Morgan* (1935) 9 Cal. App.2d 612, 615 [50 P.2d 1061], italics added); denial of his motion "will normally be upheld where there was insufficient evidence *tending to show* defendant's claim of insanity at the time of commission of the offense is *meritorious*" (*People* v. *Gibbs* (1970) 12 Cal.App.3d 526, 536 [90 Cal.Rptr. 866] (italics added); cf., to similar effect, *People* v. *Egan* (1933) 218 Cal. 408, 410-411 [23 P.2d 755] ("no showing...that appellant was insane"); *People* v. *Nye* (1929) 96 Cal.App. 186, 189 [273 P. 837] ("the hearsay statement of one person [held insufficient to constitute] *prima facie* evidence of insanity")).

clude within Penal Code section 1016 a requirement that a defendant demonstrate the *merits* of his insanity claim before being allowed to enter such a plea. A required showing on the merits of an insanity defense entails the danger of forcing a defendant to abandon one constitutional right—the privilege against self-incrimination—in order to exercise the right to plead not guilty by reason of insanity.[3] Unless one believes that the Legislature intended such a trade-off, Penal Code section 1016 cannot be interpreted subsequent to *Prudhomme* to require waiver of the privilege against self-incrimination.

Nor can it be read as requiring waiver of other privileges. Here a psychotherapist-patient privilege (Evid. Code, §§ 1010-1028) was also involved. Appellant's clinical psychologist revealed at the hearing evidence the defense intended to adduce at trial on the defense of insanity.

The trial court was correct in its determination that the change in law from *M'Naghten* to *Drew* on September 26 provided good cause for the delay in entry of the additional plea of not guilty by reason of insanity. But it was error to read Penal Code section 1016 as requiring an additional showing as to the merits and the weight of the evidence to be adduced on the new plea. Finding such a precondition in the statute flies in the face of both the privilege against self-incrimination and the psychotherapist-patient privilege and produces procedural havoc by placing the trial judge in the situation where he or she not only is required to "invade the province of the jury" but to make the jury unnecessary. For these reasons, subsequent to *Prudhomme* the only rational reading that can be given to "good cause" within Penal Code section 1016 is that a defendant must show a plausible reason for delay in tendering any plea. This appellant did to the satisfaction of the trial court and to this court. Accordingly, we treat as statutorily irrelevant the trial court's additional determination with respect to the merits of the insanity plea, and remand for jury trial on the issue of appellant's sanity to be measured by the standards enunciated in *People* v. *Drew, supra.*[4]

---

[3]Here the showing was made in open court before opposing counsel but outside the presence of the jury. But even if the hearing had been in camera, Evidence Code section 915, subdivision (a) precludes a court from hearing the allegedly privileged matter as a precondition to ruling on a claim of privilege.

[4]Contrary to the view of the dissent, we think the *Drew* standard clearly applies. *Drew* commands: "This decision will apply retroactively only to those cases not yet final in which the defendant has pled not guilty by reason of insanity...." (*People* v. *Drew, supra,* 22 Cal.3d at p. 348.) At the time the trial court heard his application appellant had obviously not yet pled not guilty by reason of insanity but the trial court *could*

The judgment is affirmed insofar as it adjudicates appellant's guilt. The cause is remanded to the trial court with directions to allow appellant to enter his plea of not guilty by reason of insanity.

Caldecott, P. J., concurred.

**CHRISTIAN, J.**—I respectully dissent.

An additional or different plea may be received by the court for good cause shown "at any time before the commencement of the trial." (Pen. Code, § 1016.) Strictly speaking, trial of the present action had not commenced when the defense made its motion; selection of the jury had not been completed. Moreover, upon a sufficient showing of good cause, a change of plea may be received even after a trial has commenced. (*In re Kubler* (1975) 53 Cal.App.3d 799 [126 Cal.Rptr. 25].) It lies within the discretion of the trial court to determine whether to allow a change of plea (*Magee* v. *Superior Court* (1973) 34 Cal.App.3d 201 [109 Cal.Rptr. 758]), and the responsibility rests upon the defense to show good cause for a change of plea. (*People* v. *Boyd* (1971) 16 Cal.App.3d 901 [94 Cal.Rptr. 575].) The question is whether in the present case the defense made a sufficient showing in support of the motion that, under the new test, appellant was legally insane at the time of the commission of the crime. (*People* v. *Morgan* (1935) 9 Cal.App.2d 612 [50 P.2d 1061].) The testimony of Dr. Lerner was that appellant "might" fit within the broader definition of insanity adopted in the *Drew* decision. Review of Dr. Lerner's testimony does not disclose any substantial showing that appellant was insane under the American Law Institute test. Moreover, by terms of the *Drew* decision, the new test was not applicable until *Drew* became final on November 1, 1978, after the conclusion of appellant's trial. It was not an abuse of discretion to deny the motion to enter a plea of not guilty by reason of insanity.

I would affirm the judgment.

A petition for a rehearing was denied April 14, 1980. Christian, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied May 28, 1980. Clark, J., was of the opinion that the petition should be granted.

---

have made *Drew applicable* simply by permitting entry of the insanity plea. Hence the real issue—as the trial court itself recognized—was not whether it *could* permit interposition of a *Drew* defense but rather whether, in the exercise of its discretion, it *would* do so.