[No. F003375. Fifth Dist. Feb. 1, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT MICHAEL HAGERMAN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Part I (only) is not published, as it does not meet the standards for publication contained in rule 976(b), California Rules of Court.

**COUNSEL**

Roger Harding Spaulding, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Thomas Y. Shigemoto and Michael T. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RANDALL, J.**\*—An information filed February 16, 1983, charged defendant Robert Michael Hagerman with eight felony counts. He was charged with one count of forcible rape (Pen. Code, § 261, subd. (2)); four counts of forcible oral copulation (Pen. Code, § 288a, subd. (c)); one count of kidnaping (Pen. Code, § 207); one count of a lewd and lascivious act upon a child under 14 (Pen. Code, § 288, subd. (b)); and one count of sodomy by force with a child under 14 (Pen. Code, § 286, subd. (c)).

Defendant obtained new counsel after the preliminary hearing and filed a Penal Code section 995 motion to dismiss. He also requested the court to order a psychiatric examination of one of the sexual assault victims. The court, after a hearing, denied both motions.

Defendant's jury trial began on May 9, 1983, and ended May 17, 1983. The jury found defendant guilty of all counts. After obtaining new counsel, defendant filed a motion for a new trial on October 31, 1983, based upon newly discovered evidence and a claim of ineffective assistance of counsel. After a hearing, the court denied the motion. Thereafter, defense counsel requested that defendant be allowed to enter a plea of not guilty by reason of insanity and asked for a hearing upon this plea. The court denied the motions.

The defendant was sentenced to serve a total term of 42 years in state prison. He then filed a timely notice of appeal.

### FACTS

The charges against defendant sprang from two separate sexual assaults. The first occurred on December 30, 1982. Rebecca L. was walking late at night from a pizza parlor to a nearby convenience market in Clovis. A man approached her and asked directions to Fresno State College. After she gave him directions he grabbed her, told her he had a knife and took her to a nearby field.

The assailant unfastened her coat and fondled her breasts. He told her that he was doing this because his wife and son had been killed in a car

---

*Assigned by the Chairperson of the Judicial Council.

crash. He pulled down the victim's slacks and performed an act of oral copulation upon her. He then forced her to orally copulate him. Finally, he lay on the ground and had the victim straddle him as he had intercourse. As he departed to the store the victim dressed and ran home.

The second assault occurred on January 4, 1983. Yolanda T., then 11 years old, was walking home from a friend's house about 5 o'clock in the afternoon. A man in a white van stopped and asked her where the college was located. He also asked where a Catholic church was located. After getting directions from the child, he grabbed her and placed her in the back of the van, binding her feet and hands and putting a rag in her mouth.

After driving around for about 15 minutes the man entered the back of the van. He unbound the victim and removed her clothing. He licked her chest and vagina. He then had the victim orally copulate him. Finally, he caused her to straddle him and anally penetrated the child.

The assailant told the victim his wife and little girl were dead from a car crash. He then allowed her to get dressed and dropped her off at her school.

Both victims described their assailant as having a beard and a mustache. The first victim also stated he had on an English cap and at trial identified defendant's cap as being of the same type. The second victim said her attacker wore white bib overalls. At trial both victims identified defendant as their assailant, though both had failed to identify the then clean-shaven defendant at the preliminary hearing. Defendant's neighbor stated he often wore white bib overalls (as he was a painter) and an English cap.

The second victim testified in detail as to the description and contents of the van. Defendant's van matched the description given except for the absence of a Christmas tree. However, pine needles and tinsel were found in the van when defendant was arrested.

A laboratory expert noted a positive microscopic comparison between pubic hairs found on the victims and those of the defendant. He found two hairs in the van matching those of the second victim. The seminal fluid in the first victim was of the same type as defendant's. Paint chips on the second victim compared positively to paint chips from a bucket in the van.

Defendant presented an alibi defense. Supported by his wife's testimony, he stated that on the night of December 30 he had picked up his wife from his mother-in-law's and that they had gone home and to bed. As to the afternoon of January 4, he testified, again supported by his wife's testimony, that at about the time of the rape they had gone together to pick up their

child at his mother-in-law's house. Defendant's mother-in-law's testimony, however, contradicted defendant's alibi. She testified that defendant's wife had not come to her house the night of the 30th. Further, she stated that on the 4th of January only her daughter came to retrieve their child. Prior statements of defendant and his wife to the police, inconsistent with their alibi testimony, were introduced.

## ISSUES

I. *Whether the Trial Court Erroneously Denied Defendant's 995 Motion Based Upon Ineffective Assistance of Counsel at the Preliminary Hearing and Insufficiency of Identification Evidence\**

. . . . . . . . . . . . . . . . . . . . . .

II. *Whether Proposition 8—The Truth-in-Evidence Provision—Impliedly Repealed Penal Code Section 1112, Prohibiting a Trial Court From Ordering a Psychiatric Examination of Sexual Assault Victims*

 Defendant contends the trial court erroneously failed to exercise its discretion in ruling upon defendant's motion requesting the court to order a psychiatric examination of one of the victims. The People claim that the court was barred from ordering the examination under Penal Code section 1112. Defendant retorts that the Proposition 8 truth-in-evidence provision, article I, section 28, subdivision (d) of the California Constitution, repealed Penal Code section 1112 and reinstated the court's discretion to act upon such motions.

In *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 176-177 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416], the court held that a trial judge is authorized, when in his discretion he deems it necessary, to order a psychiatric examination of a sexual assault victim. Under the so-called *Ballard* motion defendants were required to make a showing of necessity. In 1980 the Legislature enacted Penal Code section 1112, effective January 1, 1981. At all times pertinent Penal Code section 1112 provided: "The trial court shall not order any prosecuting witness, complaining witness, or any other witness, or victim in any sexual assault prosecution to submit to a psychiatric or psychological examination for the purpose of assessing his or her

---

*See footnote, *ante,* page 967.

credibility."[1] In *People* v. *Fleming* (1983) 140 Cal.App.3d 540 [189 Cal.Rptr. 619], the court found Penal Code section 1112 survived a challenge of unconstitutionality.

On June 9, 1982, Proposition 8 became effective. In pertinent part it states: "*Right to Truth-in-Evidence.* Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Section 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press." (Cal. Const., art. I, § 28, subd. (d).)

Defendant's claim on appeal is that the truth-in-evidence provision effectively repealed Penal Code section 1112.

The People argue that the truth-in-evidence provision of the Constitution deals only with the admission and exclusion of *known* evidence whereas the ruling in the *Ballard* case, which defendant here tries to resurrect, dealt with the power of the trial court to order a psychiatric examination.

A reading of *Ballard* supports a distinction between the court's power to admit or exclude psychiatric testimony and the court's power to order a psychiatric examination. In *Ballard* the court first held that a trial judge can determine, in his discretion, whether to admit psychiatric testimony relative to the credibility of a sexual assault victim. (*Ballard* v. *Superior Court, supra,* 64 Cal.2d at p. 175.) The court then turned to the question of the trial judge's power to order a psychiatric examination of a complaining witness in a sexual assault case. (*Id.,* at pp. 175-177.) The court concluded that the trial judge did possess the requisite power to order the examination, and, again, the court left this decision to the judge's discretion. (*Ibid.*) Thus a two-step process was developed in which the court was to exercise its discretion twice: once to determine whether to order the examination and once to determine the admissibility of the results of the examination.

---

[1] We note that in 1984 Penal Code section 1112 was amended to specifically exempt the statute from the provisions of subdivision (d) of section 28 of article I of the California Constitution. In adopting the amendment the Legislature specifically stated: "It is not the intent of the Legislature in enacting this provision to suggest or imply that subdivision (d) of Section 28 of Article I of the California Constitution has limited the application of Section 1112 of the Penal Code in any way." (Stats. 1984, ch. 1101, § 2, p. —.)

As a result the effect of our decision in this case will be limited to cases arising after June 9, 1982, and prior to the effective date of the 1984 amendment to Penal Code section 1112.

■ In passing Penal Code section 1112 in 1980 the Legislature overruled the holding in *Ballard* only with regard to the first step (see *People* v. *Haskett* (1982) 30 Cal.3d 841, 859, fn. 7 [180 Cal.Rptr. 640, 640 P.2d 776]) but did not purport to act with regard to the second step concerning the admissibility of psychiatric testimony concerning the mental state of the complaining witness in a sex case.

■ Ordering a psychiatric examination for a witness is not tantamount to ruling on the admissibility of any evidence which may be generated as a result of that examination. While the constitutional change brought about by the passage of Proposition 8 might well impact on any legislation which purported to prevent the introduction of relevant evidence concerning the mental state of mind of a victim of sex crimes, the section has no effect upon Penal Code section 1112 which does not deal with either the exclusion or the admission of such evidence.

III. *Whether Defendant Lacked Effective Assistance of Counsel When Trial Counsel Adhered to an Impeached Alibi Defense and Did Not Explore a Possible Psychiatric Defense*

■ Defendant also appeals his conviction based upon the claimed ineffectiveness of his trial counsel. During the hearing on the motion for a new trial these claims were aired, with trial counsel testifying. Defendant contends trial counsel failed to investigate adequately the possibility of a psychiatric defense.

Defendant relies upon *People* v. *Mozingo* (1983) 34 Cal.3d 926 [196 Cal.Rptr. 212, 671 P.2d 363]. In *Mozingo* the California Supreme Court found the defendant's trial counsel incompetently failed to investigate the possibility of a mental defense. (*Id.*, at p. 934.) The defendant in *Mozingo* had been accused of the rape and murder of his stepmother. He had a long history of juvenile problems. "In 1968, defendant was placed under observation in Napa State Hospital for three months. From that time until the date of the murder, (Sept. 1979) defendant was almost continuously confined in various county and state institutions (spending during this period only approximately 150 days free of confinement). In 1976, defendant pled guilty to the rape at knifepoint of a 14-year-old girl, and was adjudged an MDSO and committed to Atascadero State Hospital. After 15 months, he was rejected as unamenable to MDSO treatment and was committed to state prison. Approximately one month after being paroled, he committed the present offense." (*Id.*, at pp. 931-932.) This information was in the possession of counsel along with other reports indicating defendant had subnormal intelligence and had been diagnosed as a schizophrenic. (*Id.*, at p. 932.)

Defendant had refused to enter an insanity plea and had told his attorney he did not want a psychiatrist to examine him. (*Ibid.*)

Mozingo had tendered an uncorroborated alibi defense, which was impeached by a confession that he had made to his sister. In finding ineffectiveness of counsel the court adopted the referee's suggestion that "a possible conflict between a diminished capacity and an alibi defense would not excuse counsel's failure initially to *investigate* the potential strengths of a 'mental defense' vis-à-vis an uncorroborated alibi defense." (*Id.*, at p. 934.) The court found counsel had a burden of undertaking sufficient investigation so that he could make an informed recommendation to his client. (*Ibid.*) The court distinguished *People* v. *Haskett, supra,* 30 Cal.3d 841 and *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], wherein "evidence available to defense counsel would have failed to support [a mental defense and] the defendant's alibi[s were] at least partially corroborated." (*People* v. *Mozingo, supra,* 34 Cal.3d at p. 934.)

The instant case may likewise be distinguished from *Mozingo*. Here defendant had no history of a mental health problem. He admitted only to drinking occasionally and to having used marijuana. Counsel or his investigator spoke to several people close to defendant. None gave any indication that defendant had any problem with drugs or that he had any mental or emotional problems. Counsel testified that defendant seemed open and truthful to him and persisted in his alibi defense. Defendant's wife corroborated his alibi testimony. Furthermore, although the alibi was impeached by defendant's mother-in-law, counsel was not faced with a confession, as was the case in *Mozingo*.

A psychiatric defense is not the last refuge for a hopeless case to be implemented automatically when all else fails. Where there is no reason to suspect that an emotional or mental condition may have affected defendant's conduct, competent counsel is not required to explore the defendant's mental condition simply to demonstrate for appellate purposes that no stone has been left unturned. (See *People* v. *Eckstrom* (1974) 43 Cal.App.3d 996, 1002-1003 [118 Cal.Rptr. 391].) We will not "characterize as incompetence counsel's presentation of a defense that his client elects voluntarily to offer." (*People* v. *Haskett, supra,* 30 Cal.3d 841, 853.)

IV. *Whether Defendant's Posttrial Motion to Plead Not Guilty by Reason of Insanity Was Erroneously Denied by the Court*

Defendant's final contention is that the trial court abused its discretion when it denied defendant's oral motions to enter a plea of not guilty by

reason of insanity and to hold a hearing upon the new plea. Defense counsel made the motions on November 22, 1983, over six months after the verdict was reached by the jury and after the trial court had heard and denied his motion for a new trial. The grounds for defendant's motion for a new trial were newly discovered evidence (a psychiatrist's report) and ineffectiveness of trial counsel. The trial court denied the motion.

■ Penal Code section 1016 states in relevant part: "A defendant who does not plead not guilty by reason of insanity shall be conclusively presumed to have been sane at the time of the commission of the offense charged; provided, that the court may for good cause shown allow a change in plea at any time before the commencement of the trial." Case law has expanded defendant's right to change his plea to not guilty by reason of insanity to allow such a plea after the commencement of trial, where good cause is shown. (*People* v. *Guillebeau* (1980) 107 Cal.App.3d 531, 544 [166 Cal.Rptr. 45]; *People* v. *Herrera* (1980) 104 Cal.App.3d 167, 172 [163 Cal.Rptr. 435]; *In re Kubler* (1975) 53 Cal.App.3d 799, 806 [126 Cal.Rptr. 25]; *People* v. *Boyd* (1971) 16 Cal.App.3d 901, 908 [94 Cal.Rptr. 575].) The decision to grant or deny the motion is left to the discretion of the court. (*People* v. *Boyd, supra,* 16 Cal.App.3d at p. 908.)

■ Defendant made the motion to change his plea after the guilty verdict and after the court denied his motion for a new trial. Counsel elected to treat a clinical psychologist's report as newly discovered evidence, and it formed one of the bases for his motion for a new trial. The court denied that motion on November 21 and defendant does not challenge the denial on appeal. On the day of sentencing, November 22, counsel made his unnoticed oral motion:

"THE COURT: This is the time set for the report of the probation office and imposition of sentence in this matter.

"With the resolution for motions for a new trial, is there any further legal cause why judgment should not be pronounced?

"MR. BERMAN [defense counsel]: Yes, Your Honor.

"Mr. Hagerman would ask leave of the Court to enter a different plea of the [*sic*] not guilty by reason of insanity, and ask for a sanity phase of this trial.

"THE COURT: Do you have any authority for doing it at this late date?

"MR. BERMAN: But this is the first opportunity that—because of the posture of the case, this is the first opportunity that the issue has come up.

"THE COURT: I understand your point.

"All right, I will deny that motion.

"Any further legal cause why judgment should not be pronounced?

"MR. BERMAN: No, Your Honor." He submitted no points and authorities in support of the motion.

Although case law has expanded defendant's right to request a change of plea beyond the statutorily prescribed "commencement of trial" no case law suggests that after the verdict and a motion for a new trial defendant may still request such a change. Were we to so hold we would encourage defendants to gamble, waiting upon the outcome of a "guilt phase" trial before entering their plea of not guilty by reason of insanity. The court and prosecution would be kept in the dark about defendant's secret defense until after he had lost. A great deal of time would then necessarily be consumed in obtaining the requisite psychiatric reports, impaneling a new jury, and again presenting factual evidence pertaining to the crimes. Consequently, we hold that a motion to enter a plea of not guilty by reason of insanity is not timely when the motion is first made after the rendition of a jury verdict.

Even were we to find that defendant could make a timely change of plea after a jury verdict and subsequent to the denial of a motion for new trial, defendant in the instant case would not prevail based upon the scanty showing contained in the report of the clinical psychologist. Although the report of the psychologist might be construed as supporting the contention that defendant generally suffered a mental disorder about the time of the commission of the offenses, the report merely states "*if* it is true that the above conditions and facts were operating on the day of the alleged offenses" then defendant might have been legally insane. ■ The opinion does not directly state that he indeed was insane when he committed the offenses. "The burden of showing good cause for the change of plea rests upon the defendant. He should be required to produce evidence which would show the trial judge that there were reasonable grounds to believe that at the time of the commission of the crime he was legally insane and that he was so mentally diseased that he could not distinguish between the right and the wrong of his act or that he was not conscious of its wrongful nature. [Citations.]" (*People* v. *Morgan* (1935) 9 Cal.App.2d 612, 615 [50 P.2d 1061].) ■

It does not appear based upon the equivocal showing by defendant that the trial court abused its discretion in denying defendant's motion.

The judgment is affirmed.

Woolpert, Acting P. J., and Best, J., concurred.