[Civ. No. 33407. First Dist., Div. Four. Sept. 11, 1973.]

RUCHELL MAGEE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Robert D. Carrow, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Timothy A. Reardon and James M. Lee, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**BRAY, J.**\*—Petition for writ of mandate and/or prohibition.

Petitioner Ruchell Magee is presently charged by indictment with violations of Penal Code sections 209 (kidnaping) and 187 (murder). The indictment was originally returned by the Marin County Grand Jury and filed in the superior court for that county. Petitioner moved the court for a change of venue, pursuant to Penal Code section 1033, upon the ground that a fair and impartial trial could not be had in Marin County. The court granted his motion and ordered the place of trial changed to the City and County of San Francisco.

Petitioner's subsequent trial in the San Francisco Superior Court terminated when the court declared a mistrial by reason of the jury's inability to agree upon a verdict. The court then set a new jury trial, to commence on May 29, 1973. On that date retrial was set for June 29, 1973.

On several pertinent occasions during the proceedings which occurred prior to the mistrial, the respective superior courts had made orders to the

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

various effects that petitioner was incompetent to represent himself or to make a knowing, intelligent and understanding waiver of his right to counsel; that he was incompetent to participate actively in his defense, and was not (and would not be) permitted to do so; and that he was to address the trial court only through court-appointed counsel (Mr. Robert D. Carrow, who represented petitioner at his jury trial in San Francisco, and who appears as his counsel in the present proceeding).[1]

These orders were in full force and effect when the San Francisco Superior Court set the cause for a second jury trial to commence on May 29, 1973. Notwithstanding this fact, petitioner personally (i.e., in propria persona) filed a written motion with that court on May 2, 1973, seeking a change of venue from San Francisco. The San Francisco Superior Court granted his motion, made in open court on May 11, and, by formal order entered on May 15, transferred the cause to the Santa Clara Superior Court (respondent in the present proceeding).[2]

After the cause had been transferred as ordered, and acting through counsel, petitioner moved respondent court for, among other things, (1) an order reinstating his "pro per or co-counsel" status (see fn. 1, *ante*), (2) an order returning the cause to the San Francisco Superior Court for an evidentiary hearing on the issue of proper venue or, in the alternative, (3) an order vacating the San Francisco Superior Court's order changing the venue to Santa Clara County, (4) leave to change petitioner's plea to count 1 of the indictment (violation of Pen. Code, § 209) by adding pleas thereto of (a) former judgment of acquittal of the offense charged and (b) once in jeopardy, (5) an evidentiary hearing on the propriety of the proposed additional pleas, (6) an order dismissing count 1 of the indictment

---

[1]Among these orders, the first one by the San Francisco Superior Court was made on August 3, 1972, upon motion by the People. The court therein vacated a prior order of the Marin County Superior Court which had in effect appointed petitioner to act as his own cocounsel. In the August 3 order, the court stated, among other things, as follows: "Henceforth, the Defendant will speak only through his attorney of record, and that is Mr. Carrow. And, henceforth, all motions to be filed in this matter or in habeas corpus proceedings will be filed through his [petitioner's] attorney of record [Mr. Carrow], and no further written motions or petitions received from the Defendant will be filed or entertained by this Court unless good cause appears on the record. In that connection, this Court expressly makes an order that the Clerk of this Court will not receive and file any motions or petitions filed by the Defendant unless this Court first reviews the same and finds the same meritorious and filed within the time limits previously provided by this Court."

As hereinafter employed, the term "counsel" refers to Mr. Robert D. Carrow.

[2]As employed herein, the term "respondent court" refers to the Santa Clara County Superior Court. Except where otherwise indicated, the term "trial judge," or "judge," refers to the judge of respondent court who denied petitioner's motions hereinafter mentioned in the text.

on statutory (Pen. Code, § 995) and constitutional grounds or, in the alternative, (7) an *in limine* order restraining real party in interest (the People) from utilizing, at petitioner's forthcoming trial, an unconstitutional construction of Penal Code sections 209 and 518 as argued by the People at the earlier trial, (8) an order dismissing the indictment on statutory and constitutional grounds relating to petitioner's right to a speedy trial, and (9) dismissing the indictment pursuant to Penal Code section 1385.

Respondent court denied all of the just-mentioned motions. Petitioner (again acting through court-appointed counsel) has filed in this court a petition for writ of mandate and/or prohibition in which he seeks substantially the same relief denied him upon his motions in respondent court. We issued an alternative writ which was limited in application to the specifications set forth above as (3) and (4); we have not acted upon the other specifications mentioned, which also remain before us for disposition. We hereinafter deal with all of petitioner's specifications in sequence.

(1) *Petitioner is not entitled to the "pro per co-counsel" status sought*

The trial court properly denied petitioner the relief sought in this regard. "[T]he decision whether the defendant is capable of making a knowing and intelligent election [to waive counsel and represent himself] is a discretionary matter, which, absent a showing of abuse, will not be disturbed on appeal." (*People* v. *Floyd* (1970) 1 Cal.3d 694, 702-703 [83 Cal.Rptr. 608, 464 P.2d 64].) In *People* v. *Shroyer* (1962) 203 Cal. App.2d 478, at page 482 [21 Cal.Rptr. 460], the court said: "Every defendant in a criminal case has the constitutional right to counsel and also to represent himself if he so elects. [Citations.] However, before he may be permitted to represent himself, the trial court is duty bound to determine whether he is making a competent, intelligent and complete waiver of his constitutionally guaranteed right to be represented by counsel. [Citations.] This obligation has been described as a 'serious and weighty responsibility' [citation]; its discharge requires 'a consideration of the nature of the charge, the facts and circumstances of the case, and the education, experience, mental competence and conduct of the accused' [citations] . . . ."

In denying petitioner's motions for "pro per or co-counsel" status, the trial judge wrote a detailed memorandum decision which shows that he conscientiously and thoroughly gave consideration to the fact that petitioner had a constitutional right to represent himself unless, under the guidelines set forth in *People* v. *Shroyer, supra, People* v. *Floyd, supra,* and *People* v. *Sharp* (1972) 7 Cal.3d 448 [103 Cal.Rptr. 233, 499 P.2d 489], petitioner showed himself to be incompetent to properly defend himself against the serious charges set forth in the indictment. Before denying

petitioner's motion or motions in this regard, the judge had had ample opportunity to observe the person and demeanor of petitioner and the benefit of an extensive record with regard to both; had permitted him to argue orally; had put personal inquiry to him concerning procedural and evidentiary matters; had observed various pleadings and motions filed by him (which were numerous and extensive); and had read "long excerpts of the very voluminous record of the case."

The judge also considered the gravity of the charges against petitioner, the complexity of the factual and legal issues presented; the facts that the trial was likely to be protracted, and to require more ability than is ordinarily demanded of counsel in a criminal defense; the possible pleas available to petitioner, the elements thereof and the penalties involved; and the probability, or the lack thereof, of petitioner's receiving a fair trial if he were to represent himself or to act as cocounsel.

Upon these considerations, the trial court found that petitioner lacked the ability to participate in his defense with the knowledge, intelligence and understanding necessary thereto. The court further found that petitioner did not demonstrate a minimum familiarity with the charges against him. The record of petitioner's trial in the San Francisco Superior Court (to which record the trial court referred) indicated that "on occasion the defendant [petitioner] has committed gross improprieties" in the presence of the jury.

■ "[I]n deciding the issue of intelligent waiver of counsel, the trial court must take into consideration not only defendant's background and his answers to questions but his entire demeanor in court." (*People* v. *Glaser* (1968) 265 Cal.App.2d 849, 853, fn. 2 [71 Cal.Rptr. 706]; *People* v. *Sharp, supra,* at p. 462.) ■ "The court, however, should not permit a litigant both to have counsel and to actively participate in the conduct of the case (as by conducting examination of witnesses, interposing objections, arguing points of law or of fact, addressing the jury, etc.) unless the court on a substantial showing determines that in the circumstances of the case the cause of justice will thereby be served and that the orderly and expeditious conduct of the court's business will not thereby be substantially hindered, hampered or delayed." (*People* v. *Mattson* (1959) 51 Cal.2d 777, 797 [336 P.2d 937].)

■ This trial court found that the cause of justice, and the prospect of a fair trial for petitioner, would not be served by his personal participation in his defense with the aid of advisory counsel only. It may again be noted (see fn. 1 and accompanying text, *ante*) that several superior court judges had previously determined, upon substantial evidence, that petitioner

was incompetent to represent himself. The action of respondent court, in denying the motion or motions to permit petitioner to act "in pro per or co-counsel status" was proper; the present petition must be denied in this regard.

At this point, we acknowledge that counsel alone has signed and verified the present petition and caused it to be filed, that petitioner has not personally participated in any such action, and that counsel expressly alleges in the petition that it has been filed "without the consent of petitioner Ruchell Magee, either express or implied." We nevertheless consider and act upon it because of petitioner's personal lack of "pro per or co-counsel" status, which has been previously (and for cause) denied him below, and of which we have herein denied reinstatement in the foregoing discussion; in other words, and for the reasons stated therein, we recognize and consider the present petition because it was duly filed by petitioner through counsel, consistent with the previous lower court orders in that regard (see text at fn. 1, *ante*) and irrespective of petitioner's personal agreement or disagreement with counsel's actions.[3]

(2) and (3) *The order changing the venue to Santa Clara County*

Petitioner's in propria persona motion, filed in the San Francisco Superior Court on May 2, 1973, sought a change of venue from the City and County of San Francisco upon the grounds that the news media had held him up to public ridicule, and that the San Francisco judges had shown and applied prejudice against him. As now represented by counsel

---

[3]It bears mentioning here that the Attorney General contends, in opposition to the present petition, that it is fatally defective in form because it lacks a personal verification by petitioner as the "party beneficially interested." (Code Civ. Proc., §§ 1086, 1103.) Under the unusual circumstances presented in the present proceeding, counsel's verification of the petition qualifies it for consideration by this court. (See *id.*, § 446.)

The Attorney General also contends that the present petition is untimely, with respect to its challenge of the San Francisco Superior Court's order granting petitioner's motion for change of venue, because of the provisions of Code of Civil Procedure section 400 which require that a petition to a Court of Appeal, by "a party aggrieved" by such order, must be filed in the Court of Appeal "within 10 days after service of a written notice of the order." Under the circumstances of the present proceeding, petitioner is "a party aggrieved" within the meaning of section 400. It appears that he had actual notice of the San Francisco Superior Court's order of May 11, 1973, and of its subsequent order of May 15, 1973 (which orders respectively granted his in propria persona motion for change of venue and transferred the cause to Santa Clara County), because the second order directed him to appear in respondent court on May 23, 1973 (which he did). The 10-day time period prescribed by section 400, however, does not commence until "service of a written notice of the order." As such service did not occur in the present case, section 400 has no application.

in the present proceeding (see text at fn. 1, *ante*), petitioner seeks an order of this court (2) setting aside the San Francisco Superior Court's order changing the venue to Santa Clara County or, in the alternative, (3) an order requiring the cause to be returned to the San Francisco Superior Court for an evidentiary hearing which would produce a determination of the proper county to whose superior court the cause should be transferred. Through counsel, petitioner now contends that the San Francisco Superior Court's order changing the venue was null and void because counsel did not participate in the motion which produced it (see fn. 1 and accompanying text, *ante*) and because, in acting upon the motion, the San Francisco Superior Court did not conduct the evidentiary hearing presently sought.

In its order of May 11, 1973, the San Francisco Superior Court found that the motion filed by petitioner on May 2 was in substantial compliance with Penal Code section 1033. The court then set forth detailed reasons for the conclusion that petitioner could not receive a fair trial in San Francisco. (These included a recital of the fact that there had been extensive coverage by press, television and radio disclosing evidence relative to the case, opinions of jurors who had served at the prior trial, and editorial commentary on the case.) The May 11 order then stated that petitioner's motion for change of venue was granted.

Counsel did not sign, or join in, petitioner's motion. In the present proceeding, counsel has filed a declaration in which he states as follows: He first learned that the motion had been filed when he was informed of it by a member of the press prior to the convening of court on May 2 (the day the motion was granted). He asked the prosecuting attorney if the latter knew of the motion, and received a negative reply. Counsel was then allowed only a five-minute interview with petitioner, in which counsel stated his awareness of the motion and that he had "some reservations about leaving San Francisco," but said "we can talk about that later."

When court convened, Judge Colvin heard and ruled upon another motion which was pending in petitioner's cause. After ruling, Judge Colvin stated that the parties should remain in the courtroom because other matters were calendared to be heard by Judge Ertola. Counsel then had about five minutes to discuss various matters with petitioner (not including the pending motion for a change of venue) before Judge Ertola took the bench.

According to the record of the proceedings which followed, the clerk informed Judge Ertola that a Court of Appeal remittitur was awaiting disposition. The judge ordered it read upon the minutes and then stated, with-

out preliminary announcement or discussion: "The Court has looked over the motions that have been made in this matter, and for grounds that it will state in the written order, *the motion to change venue is granted,* and we will, by written order, inform counsel of the new jurisdiction." (Italics added.) Although the court stated that counsel might be heard on the motion ("briefly"), the record thus shows that the judge had predetermined it and that he abruptly concluded proceedings on it without hearing even a comment from counsel. The question presented arises from the judge's peremptory treatment of the motion and of counsel.

 "A party to an action may appear in his own proper person or by attorney, but he cannot do both. If he appears by attorney he must be heard through him, and it is indispensable to the decorum of the Court, and the due and orderly conduct of a cause that such attorney shall have the management and control of the action and his acts go unquestioned by any one except the party whom he represents. So long as he remains attorney of record the Court cannot recognize any other as having the management of the case. If the party for any cause becomes dissatisfied with his attorney the law points out a remedy. He may move the Court for leave to change his attorney, . . . Until that has been done, the client cannot assume control of the case. While there is an attorney of record, no stipulation as to the conduct or disposal of the action should be entertained by the Court unless the same is signed or assented to by such attorney. . . . Such a rule is not only indispensable to the orderly conduct of a cause, but is likewise a safeguard to the client against the intrigues of his adversary. Moreover . . . it is proper to add, that to entirely ignore the attorney of record . . . is unbecoming the dignity of the legal profession, . . ." (*Board of Commissioners* v. *Younger* (1865) 29 Cal. 147, 149.)

 It is well established in the law that statutory provisions affording rights to "the plaintiff" or to "either party" are not to be taken literally. Such provisions merely state the rights of the parties and do not change the rule that the procedural step must be taken for the party by his attorney of record. (See, e.g., *Boca etc. R.R. Co.* v. *Superior Court* (1907) 150 Cal. 153, 157 [88 P. 718] [right of dismissal]; *Wylie* v. *Sierra Gold Co.* (1898) 120 Cal. 485, 487 [52 P. 809] [extension of time]; *Anglo California Trust Co.* v. *Kelly* (1928) 95 Cal.App. 390, 393 [272 P. 1080] [demand for jury trial] and *Electric Utilities Co.* v. *Smallpage* (1934) 137 Cal.App. 640, 642 [31 P.2d 412] [filing of briefs pro. per.].) In *People* v. *Merkouris* (1956) 46 Cal.2d 520, 555 [297 P.2d 999], it was held that the trial court abused its discretion "in permitting defendant [over the implied objection of his counsel] to withdraw his plea of not guilty by reason of insanity."

■ The Attorney General contends in effect that the San Francisco Superior Court's treatment of petitioner's personally filed motion was proper upon the ground that the order made by the court on August 3, 1972 (quoted in fn. 1, *ante*) permitted petitioner to file such motions in propria persona *if* "the Court first reviews the same and finds the same meritorious and filed within the time limits previously provided by . . . [the] . . . Court." (See *ibid.*) However, the just-quoted language of the August 3 order is ambiguous, at best, when read in the context provided by the full order and the previous proceedings dealing with petitioner's incompetence to participate actively in his defense. In light of that context and of the authorities cited and quoted above, the order of August 3, 1972, may not be interpreted as having permitted the San Francisco Superior Court to act upon petitioner's in propria persona motion as it did: i.e., without permitting counsel to participate and to be heard. The court's action in purporting to grant the motion on May 11, 1973, was therefore in error.

■ We have defined the San Francisco Superior Court's error in the hope of preventing a recurrence thereof under the circumstances which are likely to continue in subsequent proceedings involving petitioner's prosecution. We need not hold, however, that the error operated to nullify the order granting his motion for a change of venue from San Francisco. This is so because of petitioner's present position on his second argument, relative to the same order, in which he contends (3) that the order was void because the San Francisco Superior Court failed to conduct an evidentiary hearing, before granting his motion, concerning a proper county to which the venue should have been changed as moved. At oral argument in the present proceeding, counsel for petitioner in effect waived his overall contention that the orders made by the San Francisco Superior Court on May 11 and 15, 1973 (which respectively granted petitioner's in propria persona motion for change of venue and transferred the cause to Santa Clara County for trial) were void, provided this court were to hold that petitioner is entitled to *an* evidentiary hearing on the subject of a proper transferee county.

As effective at relevant times herein (see fn. 4, *post*), Penal Code section 1033 provided in pertinent part that: *"In a criminal action pending in the superior court,* the court shall order a change of venue: (a) On motion of the defendant, to another county *when it appears that there is a reasonable likelihood that a fair and impartial trial cannot be had in the county.* . . ."[4]

---

[4]We here quote section 1033 as added by the 1971 Legislature. (Stats. 1971, ch. 1476, § 3, p. 2915 et seq.) The 1971 enactment took effect on March 4, 1972. (*Id.*, at p. A-3.) As the statute's effective date occurred more than one year before peti-

(Italics added.) As the result of the challenged orders of the San Francisco Superior Court, the "criminal action" against petitioner is "pending in the superior court" for Santa Clara County (respondent court herein). Section 1033 therefore entitles petitioner to show in respondent court, if he can do so upon a new motion for venue there, "a reasonable likelihood that a fair and impartial trial cannot be had" in Santa Clara County. If he undertakes such showing upon an appropriate motion (which he has not made in respondent court) the question will be whether Santa Clara County is a proper place for trial under the standard defined in section 1033. The answer will lie within the sound discretion of respondent court (*People* v. *Duncan* (1960) 53 Cal.2d 803, 812 [3 Cal.Rptr. 351, 350 P.2d 103]), and petitioner will be entitled to an evidentiary hearing, in that court, on the question. (See rule 841, Cal. Rules of Court.) According to our understanding of petitioner's present position as stated at oral argument, such hearing will meet his present objective. We therefore deny the present petition in this regard, but without prejudice to petitioner's moving respondent court, pursuant to Penal Code section 1033, for a change of venue from Santa Clara County. Under the circumstances, we find it unnecessary to decide whether petitioner was entitled to an evidentiary hearing, in the San Francisco Superior Court, upon the subject of a proper transferee county.

(4) and (5) *Change of plea*

One of the offenses for which petitioner was tried was (count 1), violation of Penal Code section 209 (kidnaping for purpose of extortion). As stated, the jury could not agree and a mistrial was granted. Petitioner contends that actually the jury had agreed unanimously that he was not guilty of violation of section 209 but had disagreed 11 to 1 in favor of finding defendant guilty of violation of section 207,[5] a lesser included offense.

Petitioner therefore moved to change his plea to count 1 to plead a former judgment of acquittal of the offense charged and once in jeopardy. The basis for his desire to enter such pleas is an affidavit of the foreman of

---

tioner moved the San Francisco Superior Court for a change of venue, we deem the present language of section 1033 to be controlling in this proceeding. (See *United States* v. *National City Lines* (S.D.Cal. 1948) 80 F.Supp. 734, 739-742.)

[5]The difference between these two sections is that section 209 deals with kidnaping for ransom, reward, etc. when the victim suffers bodily harm and the penalty therefor is imprisonment for life without possibility of parole, while section 207 deals with kidnaping without the requirement of its being for ransom, reward, etc. and the penalty therefor is imprisonment in the state prison for 1 to 25 years (Pen. Code, § 208).

the jury which tried him. The affidavit states in effect that the jury in its deliberations agreed that petitioner was not guilty of the charge of violation of section 209 but favored conviction of violation of section 207 by an 11 to 1 vote. On the other hand, an affidavit of another of the jurors is to the effect that at no time during their deliberations did they either by vote, resolution or otherwise agree that petitioner was not guilty of violating section 209.

A motion to enter additional pleas upon retrial is directed to the sound discretion of the trial judge and his ruling denying such a motion will not be disturbed, except upon showing of an abuse of discretion. (*People* v. *Natale* (1962) 199 Cal.App.2d 153, 157 [18 Cal.Rptr. 491].) Penal Code section 1016 provides in relevant part that ". . . the court may *for good cause shown* allow a change of plea at any time before the commencement of the trial." (Italics added.) The existence of good cause is for the trial court's determination and "[t]he burden of showing good cause for the change of plea rests upon the defendant." (*People* v. *Morgan* (1935) 9 Cal.App.2d 612, 615 [50 P.2d 1061].)

"[T]he defendant is required to show the trial judge that there is merit to his claim of former acquittal or once in jeopardy. [Citations.]" (*People* v. *Doolittle* (1972) 23 Cal.App.3d 14, 18 [99 Cal.Rptr. 810].) This petitioner did not and cannot do. "In the present case no verdict was rendered at all in view of the failure of the jury to agree upon a verdict. In such a situation the status of the case is the same as if there had been no trial. [Citations.]" (*People* v. *Doolittle* at p. 18.)

The record establishes that at the trial the court polled each juror individually as to whether he or she believed that there was a reasonable probability that the jury could arrive at a verdict. Each juror, including the foreman, responded unequivocally that there was no such possibility. "The determination whether there is a 'reasonable probability that the jury can agree' is for the trial judge, and not the jury, and must be made on the basis of his own impression of the psychological situation involved. [Citations.]" (*People* v. *Doolittle, supra,* at pp. 18-19.)

On April 1, 1973, after the jury had been deliberating some 41½ hours, the court three times called them into court and inquired as to whether they had reached a verdict and was informed that they had not. On April 2, defense counsel requested a stay of all proceedings to enable a petition to be filed in the appellate court to mandate the trial court to declare a mistrial on the ground that the jury could not agree. This motion was denied. On April 3, as before stated, the court queried each juror individually and was informed by each that the jury was hopelessly deadlocked.

The court then found that the jury was hopelessly deadlocked and declared a mistrial. The court then asked, "Is there any objection to the jury being discharged?" Defense counsel replied, "No." On April 1, counsel twice moved for a mistrial and once on April 2 and, as stated, expressly made no objection when the mistrial was granted.

On April 2, in chambers, defense counsel suggested that it might be possible for the jury to have reached a unanimous decision on the charge of violation of section 209 but not on the lesser crime of violation of section 207 and asked that the next day inquiry be made of the jury not only of the charged offense but of lesser included offenses.

This was not done and properly so. ▇▇▇ "[I]n the trial of an offense which necessarily includes a lesser offense, as was the case here, the jury, before they can return a verdict, must on the one hand, agree that the defendant is guilty of the offense charged or any included offense or, on the other hand, agree that he is not guilty of any offense, whether the greater or the lesser. We are of the opinion that although the law contemplates the conviction of an accused of a lesser offense when the evidence is insufficient to justify conviction for the greater offense charged [citations], an acquittal of the greater charge does not result because the jury may have deemed the evidence insufficient to support that charge unless the jury agrees that he is guilty of a lesser included offense or agrees that he is not guilty of the crime charged, which finding includes a determination that he is not guilty of any included offense." (*People* v. *Doolittle, supra,* 23 Cal.App.3d 14, 19-20.)

▇▇▇ "In cases where it satisfactorily appears to the court that there is no reasonable probability that the jury can resolve its differences and render a verdict, a legal necessity arises to discharge the jury and jeopardy does not attach to the defendant." (*People* v. *Doolittle, supra,* p. 22.)

▇▇▇ Not only did defense counsel several times move for a mistrial; he stated that he had no objection to it when granted.

"Our past cases interpreting the double jeopardy protections demonstrate that the defendant's voluntary institution of a mistrial motion is normally a sufficient indicant of the defendant's consent to the discharge of the jury to bar later recourse to a 'once in jeopardy' plea." (*People* v. *Hathcock* (1973) 8 Cal.3d 599, 613 [105 Cal.Rptr. 540, 504 P.2d 476]; *People* v. *Griffin* (1967) 66 Cal.2d 459, 464 [58 Cal.Rptr. 107, 426 P.2d 507].)

As to the foreman's affidavit a somewhat similar situation occurred in *Griffin, supra.* There the jury was unable to reach a verdict on the charge of murder. After the jury was discharged the foreman stated in open court

that the jury stood 10 to 2 for acquittal of second degree murder. Upon. retrial, the defendant moved for dismissal on the basis that there had been an implied acquittal of first degree murder. The denial of the motion was sustained on appeal.

"Defendant does not deny that the jury was properly discharged pursuant to Penal Code section 1140. (Compare *Paulson* v. *Superior Court,* 58 Cal.2d 1, 5 . . . .) We may not infer from the foreman's statement that the jury had unanimously agreed to acquit of first degree murder. There is no reliable basis in fact for such an implication, for the jurors had not completed their deliberations and those voting for second degree murder may have been temporarily compromising in an effort to reach unanimity. Nor need we 'imply' an acquittal as a matter of policy. Defendant has not had a conviction of a lesser offense overturned on appeal, and it is therefore not necessary to prohibit retrial for any greater crime, to protect the right to appeal." (*People* v. *Griffin, supra,* 66 Cal.2d 459, 464; accord *People* v. *Agnew* (1947) 77 Cal.App.2d 748, 760 [176 P.2d 724].)

While in the instant case the foreman alleges that the jury had unanimously agreed to acquit of the major crime, and in *Griffin* the foreman made no such statement, the principle of the case applies here. The jurors had not completed their deliberations. Moreover, in *People* v. *Doolittle, supra,* where a mistrial occurred, a juror testified that the jurors had unanimously voted that the defendant was not guilty of first or second degree murder but could not agree on whether he was or was not guilty of manslaughter. As there stated, no verdict was rendered and no jeopardy could attach. If jurors, by affidavits or testimony, could impeach their action in stating to the court that they could not reach a verdict, similar reasoning would permit them to impeach their verdict if rendered. A verdict is not a verdict unless rendered in open court and until such event occurs even though the jury might in its deliberations have come to a tentative view on what verdict it might bring, until it has ended its deliberations and stated its position in court, there is plenty of opportunity for the jury to change its view. There is no authority that supports the contention that the jury may repudiate its statement to the court.

In *People* v. *Borousk* (1972) 24 Cal.App.3d 147, 160, fn. 20 [100 Cal.Rptr. 867], the court stated: "[I]t would not be proper to go behind the jury's declaration that there was no reasonable probability that it could agree on a verdict." Moreover, where an accused by his affirmative conduct clearly evidences consent to the discharge of the jury, he will be held to have waived his constitutional guaranty against double jeopardy. (*Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 713 [87 Cal.Rptr. 361, 470 P.2d

345]; *People* v. *Terry* (1970) 2 Cal.3d 362, 386 [85 Cal.Rptr. 409, 466 P.2d 961].)

We adopt the statement of the trial court in its memorandum of decision, viz., "The Court finds no good cause shown justifying a change of plea. It appears to the Court on the basis of the record before it that the jury was properly discharged pursuant to legal necessity, and that jeopardy did not attach *People* v. *Doolittle* 23 CA3 14 (1972). In view of this finding, a further evidentiary hearing is deemed unnecessary."

(6) *Petitioner may not now obtain review of the Penal Code section 995 order.*

Petitioner seeks review of the denial of his motion under Penal Code section 995 to set·aside the indictment.

"Penal Code section 999a requires that a petition for writ of prohibition seeking review of a denial of a 995 motion be filed within 15 days of the denial. A petition for prohibition not filed within the 15 days must be denied. (*Bernstein* v. *Superior Court* (1955) 45 Cal.2d 774 [291 P.2d 29].)" (*Aydelott* v. *Superior Court* (1970) 7 Cal.App.3d 718, 721 [86 Cal.Rptr. 713]; *Amacher* v. *Superior Court* (1969) 1 Cal.App.3d 150, 155 [81 Cal.Rptr. 558].)

(7) *The interpretation of Penal Code sections 209 and 518 not erroneous.*

Petitioner contends that these two sections are void for vagueness and that the construction placed upon them by the prosecution was strained and improper.

Section 209 in pertinent part states that any person who kidnaps or holds or detains any individual "for ransom, reward or to commit extortion" is guilty of a felony. Section 518 provides, in pertinent part, that "Extortion is . . . the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, . . ."

The prosecution in its opening statement at the trial stated that the evidence would show that "this kidnapping was done with the specific intent to hold and detain the hostages for ransom, reward or extortion," that the hostages were held for the purpose of committing extortion, that is, the obtaining by wrongful use of force and fear of an official act of the Sheriff of Marin County and other law enforcement officers, namely that of directing them to refrain from resisting and stopping the criminal acts, kidnaping, escape and assault then taking place; that the purpose of the kidnapers was to hold the hostages to induce the officers not to do their

duty in fear that if they did so the kidnapers would kill or injure the hostages.

The trial court, in effect, held that the kidnaping of hostages for said purposes would constitute the crime of kidnaping "to commit extortion" under sections 209 and 518.

We find nothing vague in these statutes as it is clear that the kidnaping and holding of hostages may induce by force or fear a police officer (who is a public officer) to forego his official duty not to interfere with law violations occurring in his presence.

It may very well be that on a retrial the prosecution may adduce other acts of extortion than those mentioned in the foregoing statement. However, we see no reason, if no additional acts are proposed, to order a dismissal of count 1 or to order the trial court to refrain from further proceedings in the case.

(8) *There has been no denial of petitioner's right to a speedy trial.*

 Petitioner's claim that he has been denied his right to a speedy trial is not supported by the record. Although this action has been pending for a very long time, the record clearly discloses that the delays were either caused by petitioner or that he expressly consented to them.[6]

There is no reason why this court should review the transcript of the trial to determine whether the evidence there adduced would have supported a conviction of petitioner of the offense charged in count 1, for two reasons: (1) where a mistrial has been granted "the status of the case is the same as if there had been no trial." (*People* v. *Doolittle, supra,* 23 Cal.App.3d 14, 18.) And, secondly, it is possible that the evidence at the retrial may be different from that received at the first trial.

(9) *Petitioner was not entitled to dismissal of the indictment upon the declaration of a mistrial.*

 As the trial judge indicated in denying petitioner's motion to respondent court in this regard (see "(5)," *supra*), the San Francisco Superior Court's order declaring a mistrial, and its subsequent discharge of the jury, were "pursuant to legal necessity," jeopardy did not attach, and the results of those actions were "the same as if there had been no . . . trial." (*People* v. *Doolittle, supra,* at p. 22.) Accordingly, there is no

---

[6]A part of the delay is due to the agreement of all parties that the trial of petitioner should await a reasonable period after the termination of the trial of petitioner's codefendant, Angela Davis.

merit to petitioner's present contention that he was entitled to dismissal of the indictment, "in furtherance of justice" and pursuant to Penal Code section 1385, when or after those actions occurred.

The alternative writ issued herein is discharged. The petition is denied, without prejudice to petitioner's making a motion in respondent court, pursuant to Penal Code section 1033 and if he sees fit, for a change of venue from Santa Clara County.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied October 5, 1973, and petitioner's application for a hearing by the Supreme Court was denied November 7, 1973.