[No. A047334. First Dist., Div. Two. May 2, 1991.]

In re the Marriage of JOHN and HEBE HASSO.
HEBE HASSO, Respondent, v.
JOHN HASSO, Appellant.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IV.

**COUNSEL**

Bien, Summers & Dale, Elliot L. Bien, Kadushin, Fancher, & Wickland and Paige Wickland for Appellant.

Guadagni, Flax & McGrath and Patrick McGrath for Respondent.

## Opinion

**SMITH, J.**—Appellant John Hasso (Husband) appeals from a judgment enforcing the terms of a written marital settlement agreement executed by him and respondent Hebe Hasso (Wife) which disposed of outstanding property rights issues arising from the dissolution of their marriage.

Husband challenges the order granting Wife's motion to enforce the settlement. We will reject Husband's claims, concluding that there was substantial evidence for finding that the approval of the parties' respective attorneys was not a condition precedent for enforcement of the agreement, that attorney ratification was not required as a matter of public policy, and that Husband's assertions of undue influence, coercion and duress are without merit.

## Background

On March 8, 1984, Wife filed a petition in Napa County to dissolve the marriage of 29 years between herself and Husband. A judgment dissolving their marital status only was entered on July 15, 1986. The parties, who are of Iraqi descent, owned a vast array of assets and real property, not only in California but in Iran and Lebanon.

On November 12, 1984, the parties entered into a "Property Settlement and Property Separation Agreement" (1984 agreement) which divided up their major assets and liabilities. The agreement was negotiated without attorneys and was mediated by Husband's cousin, Alan Hasso.

Subsequently, Husband demanded that certain personal property not specifically mentioned in the agreement should be awarded to him; Wife assented and the parties executed a further agreement dated October 6, 1985. The 1985 agreement, which reconfirmed the property division recited in the 1984 agreement, was negotiated at the home of the parties' daughter Bonita Fargo, again without the participation of attorneys. It was later memorialized in writing by Wife's attorneys, although Husband obtained the advice of his retained counsel with respect to its provisions.

One of the assets awarded to Wife was the "Thurber Note" consisting of the right to receive payments under promissory notes on the Thurber apartment complex in Ohio. According to Wife, Husband induced her to accept the note by representing that it had a value of $1.2 million, whereas she later discovered that the parties owned only a 28 percent interest therein. Claiming that she had been shortchanged by $900,000 as a result of Husband's misrepresentation, Wife retaliated by refusing to perform that

provision of the agreement obligating her to convey two lots in Jounieh, Lebanon known as the "Casino property"; she also sought relief by way of order to show cause. The parties attempted to arbitrate the dispute, but the arbitrators failed to reach a decision.

On May 13, 1987, the parties executed another marital settlement agreement (1987 agreement) which was drafted by Alan Hasso and again negotiated without the assistance of attorneys. Husband received $45,000 in connection with a sale of property mandated by the agreement, but the agreement ultimately became unenforceable due to the failure of an essential condition.

In the fall of 1988, the parties met again at Bonita Fargo's residence and negotiated a new agreement (1988 agreement). At the time, the principal outstanding issues between them were: (1) Wife's claim of misrepresentation regarding the "Thurber Note"; (2) Husband's retention of $45,000 obtained by virtue of the failed 1987 agreement; (3) the disposition of the Casino property; and (4) the parties' respective rights to principal and interest on approximately $2.5 million on deposit in lieu of appeal bond in a Napa County Superior Court case entitled Duggan v. Hasso (*Duggan*) (under the 1984 agreement the parties had agreed to divide the *Duggan* account funds equally, but Wife had been keeping all the interest payments). At Husband's request, the parties' daughter Jennifer Hasso Najm, an attorney at law, prepared a draft agreement and submitted it to Husband in early October 1988. The negotiations produced the following accord: Wife would relinquish her claim on the Thurber note; both parties would transfer the Casino property to their four daughters in equal shares; Husband would be allowed to keep the $45,000 he received under the October 1987 agreement; and Wife would be allowed to retain all interest payments she had received on the *Duggan* accounts, but thenceforth Husband would be entitled to all of the parties' interest in the accounts. On November 6, 1988 the parties signed an agreement assigning their interest in the Casino property to their daughters and the following day they executed the agreement which is the subject of this appeal.

The 1988 agreement expressly provides that it may be enforced by either party by motion. Although the agreement contains signature lines at the bottom for each of the parties' attorneys under the caption "Approved As to Form," it also contains acknowledgments that they had retained their own counsel to advise them in connection with their rights and in the negotiation of the agreement; that each was "fully and completely informed as to the facts relating to the subject matter of this Agreement, and as to the rights and liabilities of both parties"; that they had given "careful and mature thought to the making of this Agreement" and had entered into it

"voluntarily, free from fraud, undue influences, coercion or duress of any kind." Prior to executing the agreement, Husband and Wife went over it together word by word, paragraph by paragraph and page by page.

After the execution of the 1988 agreement, Wife's mother Augusta Maidani, who had been authorized to write checks on the *Duggan* accounts, executed a power of attorney enabling Bonita Fargo to write such checks. Pursuant to that power, Ms. Fargo began disbursing the interest payments on the accounts to Husband. However, soon after it was signed, Husband renounced the agreement. He told Bonita Fargo that his refusal was based on the fact that his daughters had refused to agree to convey the Casino property back to him once they had obtained title.

Wife thereupon brought a motion to enforce the 1988 settlement agreement under Code of Civil Procedure section 664.6 (section 664.6). The court, after receiving declarations for and against, granted the motion and issued a judgment commanding the parties to abide by the terms of the agreement.

## APPEAL

### I

### *Waiver of Right of Appeal*

As part of the negotiations which culminated in the 1988 agreement, Wife agreed to assign all her interest in the *Duggan* accounts to Husband and steps were taken to accomplish that. Upon Husband's refusal to go through with the settlement agreement, Wife filed for an injunctive order preventing Husband from receiving the funds. The court issued a temporary restraining order (TRO), freezing disbursement of the funds pending resolution of the enforcement motion, but dissolved the TRO when it granted the motion.

Wife initially claims that Husband has waived his right to appeal by accepting the fruits of the judgment, i.e., interest payments on the *Duggan* accounts.

■ "Ordinarily, a party cannot accept the benefits of a judgment, in whole or in part, and then attack it by appeal. His conduct in taking any of its advantages while seeking to reverse it is inconsistent, and the result is a waiver of the right." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 161, p. 171; see, e.g., *Lee* v. *Brown* (1976) 18 Cal.3d 110, 114 [132 Cal.Rptr. 649, 553 P.2d 1121]; *Oliver* v. *Schene* (1960) 182 Cal.App.2d 473, 477 [6

Cal.Rptr. 461].) The doctrine is applicable to dissolution cases involving division of property rights. (*Bulpitt* v. *Bulpitt* (1951) 107 Cal.App.2d 550, 552 [237 P.2d 539]; *Swallers* v. *Swallers* (1948) 89 Cal.App.2d 458, 460 [201 P.2d 23].)

If Wife's assignment to Husband of the parties' interest in the *Duggan* accounts were an integral part of the settlement which was enforced by the judgment below, Wife's waiver argument would deserve serious consideration. (See *Epstein* v. *DeDomenico* (1990) 224 Cal.App.3d 1243 [274 Cal.Rptr. 521] [buyer's acceptance of return of their deposit as part of settlement in real estate dispute constituted waiver of right to appeal from order enforcing the settlement].) However, the 1988 agreement (unlike its 1987 predecessor) *nowhere mentions* the *Duggan* accounts. The disposition of these monies was apparently the subject of an oral understanding collateral to the written agreement, but it is not addressed by the contract or by the judgment enforcing it. Husband's receipt of these interest payments therefore cannot be called a "fruit" of the judgment below, since such receipt was not called for by terms of the settlement or the judgment. While Wife may have other remedies in connection with Husband's acceptance of the *Duggan* funds, a dismissal of this appeal is not one of them.

## II

### *Attorney Approval as a Condition Precedent*

██    Husband first argues that approval of the parties' respective attorneys was intended to be a precondition to the enforceability of the 1988 agreement. Preliminarily, we note the applicable principles of review.

██    Even where there are disputed facts, on a motion to enforce a settlement agreement pursuant to section 664.6, the trial court has the authority to determine whether the parties entered into a valid and binding settlement of all or part of the case. (*Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989, 994 [203 Cal.Rptr. 356].) In making such a determination, the court sits as a trier of fact and its ruling on all factual issues must be upheld where supported by substantial evidence. (*Estate of Dipinto* (1986) 188 Cal.App.3d 625, 629 [231 Cal.Rptr. 612]; *Fiore* v. *Alvord* (1985) 182 Cal.App.3d 561, 565 [221 Cal.Rptr. 400].)

██    A settlement agreement is in the nature of a contract and is therefore governed by the same legal principles applicable to contracts generally. (*Gorman* v. *Holte* (1985) 164 Cal.App.3d 984, 988 [211 Cal.Rptr. 34]; *Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 677 [186 Cal.Rptr. 589, 652 P.2d 437].) In interpreting the agreement, the court

must consider all of the terms thereof, together with the circumstances and conduct surrounding its execution. (Civ. Code, §§ 1641, 1647; *In re Marriage of Williams* (1972) 29 Cal.App.3d 368, 378 [105 Cal.Rptr. 406].)

■ Although the agreement at bar does bear signature lines for "Approval *As To Form*" of the parties' respective attorneys, it nowhere mentions that it is subject to review or content approval by such attorneys. Contrariwise, it contains acknowledgments by both parties that they had access to retained counsel prior to signing and were "fully and completely informed as to the facts relating to the subject matter of this Agreement, and as to [their] rights and liabilities. . . ."

The language does not impose attorney approval as a condition precedent; at best, it raised an ambiguity on the issue which the trial court was entitled to resolve by considering not only the words used in the document, but the circumstances surrounding its execution. (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 443-444 [116 P.2d 62]; *In re Marriage of Trearse* (1987) 195 Cal.App.3d 1189, 1192 [241 Cal.Rptr. 257].)

■ A condition is an event which must occur or be excused before performance on a contract becomes due. (Rest.2d Contracts, § 224; *Beverly Way Associates* v. *Barnham* (1990) 226 Cal.App.3d 49, 54 [276 Cal.Rptr. 240].) Conditions precedent are not favored and contractual provisions will not be so construed in the absence of language plainly requiring such a construction. (*Helzel* v. *Superior Court* (1981) 123 Cal.App.3d 652, 663 [176 Cal.Rptr. 740].) ■ There is no basis for such a construction here—the agreement contains no language that it is "subject to" or "conditioned on" attorney approval, and indeed has several paragraphs indicating an intent by the parties to enter into a binding accord regardless of their attorneys' advice. Husband's claim that the "plain language" of the agreement makes attorney approval a condition precedent is devoid of merit.

Extrinsic evidence even more compellingly negates an inference that attorney approval was a condition to the enforceability of the agreement: On no less than three prior occasions, the parties had met and hammered out written property settlement agreements without the assistance of attorneys. In fact, Husband had executed the 1987 agreement *against* the advice of his lawyer. Consistent with Husband's continually expressed preference for mediation by family members rather than attorney participation, the 1988 agreement was also negotiated without counsel present. After signing, the parties immediately began to perform the agreement, without waiting for attorney approval. There was also evidence that the lack of attorney approval was a smoke screen to conceal Husband's true motive for repudiating the agreement, i.e., the refusal of his daughters to consent to his secret

plan for having them convey the Casino property to him after receiving title to it.

In sum, there was substantial evidence, both from the language of the document and the surrounding circumstances, to support the trial court's implied finding that attorney approval was not a condition for enforceability of the 1988 agreement.

## III

### *Public Policy Considerations*

■ Husband next argues that even if the contract itself did not make attorney approval a condition precedent, public policy concerns compel a court to refrain from enforcing agreements entered into by parties without the consent of their retained counsel. He claims that two cases, *In re Marriage of Maricle* (1990) 220 Cal.App.3d 55 [269 Cal.Rptr. 204], and *In re Marriage of Wickander* (1986) 187 Cal.App.3d 1364 [232 Cal.Rptr. 621], are squarely on point and dispositive of this appeal.

*Maricle* is not controlling. There, three years before trial and without the knowledge of their attorneys of record, the spouses entered into an *oral* agreement settling their property rights. *Maricle* held that the agreement was unenforceable because Civil Code section 4800, subdivision (a), requires any agreement dividing the community property to be in writing, or upon stipulation in open court. (*In re Marriage of Maricle, supra,* 220 Cal.App.3d at p. 57.) In dictum, the court cited *Wickander* for the proposition that "where a party is represented by an attorney of record, the court should not accept a stipulation or agreement made without the knowledge and consent of the attorney." (*Id.,* at p. 58, citing *In re Marriage of Wickander, supra,* 187 Cal.App.3d at p. 1364); however, it went on to theorize that this rule might not apply where the client knowingly desired to ratify the agreement against such attorney's advice. (*Ibid.*)

In *Wickander,* a wife signed two property settlement agreements in the absence of her represented counsel. Although the record is not entirely clear on this point, it appears that the *husband's* attorney was involved in negotiating the agreement directly with the wife, for she contended that the settlement was violative of then rule 7-103 of the State Bar Rules of Professional Conduct (forbidding direct attorney communication with parties represented by counsel without such counsel's consent). (187 Cal.App.3d at p. 1367.) The court bypassed the wife's argument in favor of the following

quote from *Magee v. Superior Court* (1973) 34 Cal.App.3d 201, 213 [109 Cal.Rptr. 758] (*Magee*): "'. . . While there is an attorney of record, no stipulation as to the conduct or disposal of the action should be entertained by the Court unless the same is signed or assented to by such attorney . . . .'" *Wickander* rejected the husband's attempt to distinguish *Magee* on grounds that it was a criminal case because "[t]he case upon which *Magee* relies and which it extensively quotes, *Board of Commissioners* v. *Younger*, [(1865) 29 Cal. 147, 149] . . . is a civil case." (*Wickander, supra*, 187 Cal.App.3d at p. 1367.) As we shall see, the cases relied on by *Wickander* do not support its broad holding.

*Magee* involved a criminal defendant who personally filed a motion while he was represented by counsel. In concluding that the trial court erred in granting the motion, the court, quoting *Younger*, said: "'A party to an action may appear in his own proper person or by attorney, but he cannot do both. If he appears by attorney he must be heard through him, and it is indispensable to the decorum of the Court, and the due and orderly conduct of a cause that such attorney shall have the management and control of the action . . . .'" (*Magee, supra*, 34 Cal.App.3d at p. 213, quoting *Board of Commissioners* v. *Younger, supra*, 29 Cal. at p. 149 (*Younger*).) Because of its vastly different application of both facts and law, *Magee* cannot be considered sound authority for the proposition that marital settlement agreements between represented parties are unenforceable in the absence of attorney consent.[1] We therefore turn to *Younger*, the "civil case" decided around the end of the Civil War, which *Wickander* viewed as dispositive.

*Younger, supra*, involved a stipulation for dismissal of an action signed by the attorney for the defendant and the plaintiffs (commissioners) them-selves. Without the knowledge of their attorney of record, defendant's coun-sel had secured the stipulation directly from the commissioners, misrepre-senting certain aspects of the settlement in the process. (29 Cal. at pp. 148-149.) *Younger* reversed the order dismissing the action, but its holding is not premised on any declared policy against having represented parties negotiate settlements without counsel.

In stating that "[w]hile there is an attorney of record, no *stipulation* as to the *conduct* or *disposal* of the action should be entertained by the Court unless the same is signed or assented to by such attorney" (29 Cal. at p. 149, italics added), *Younger* cites only one authority—"Section Nine of the Act

---

[1] The same is true of *People* v. *McCary* (1985) 166 Cal.App.3d 1 [212 Cal.Rptr. 114], the third authority cited by *Wickander*, which similarly acknowledges that it is improper for a court to allow a criminal defendant to proceed in propria persona while still represented by counsel. (*Id.*, at p. 11, fn. 8.)

concerning attorneys and counselors." That early act (Stats. 1851, ch. 4, § 9, p. 49), is a virtual replica of current Code of Civil Procedure section 283, which simply confers authority on an attorney to manage and control his client's case in procedural matters during the course of the action. (See *Bowden* v. *Green* (1982) 128 Cal.App.3d 65, 73 [180 Cal.Rptr. 90].)[2] As with *Magee*, the focus of the court in *Younger* is on the potential mischief in allowing both a party and his attorney of record to exercise authority and control over the litigation. The court reasoned that "[s]o long as he remains attorney of record, the Court cannot recognize any other as having the management of the case." (*Younger, supra,* 29 Cal. at p. 149.) Accordingly, a stipulation for dismissal of the suit signed *only* by the party without the knowledge and consent of his counsel of record should not be countenanced by the court. (*Ibid.*)

Another expressed ground for *Younger*'s ruling was the court's strong disapproval of defense counsel's tactic of "entirely ignor[ing] the attorney of record and enter[ing] without his consent, into secret negotiation with his client touching the management of his case," which it characterized as "unbecoming the dignity of the legal profession, and destructive of that courtesy which is due from one member to another." (29 Cal. at pp. 149-150.) *Younger,* therefore, rests on the unfettered right of an attorney to control the management of the case *before the court,* coupled with the state Supreme Court's revulsion for a settlement procured by ex parte contact between an attorney and his opposing litigant. *Wickander*'s interpretation of *Younger* as absolutely forbidding represented parties from reaching settlements without the express consent of counsel is, therefore, incorrect. Nor do we believe that such a rule is desirable a matter of public policy.

"The law wisely favors settlements. . . . [Citations.] [I]t is the policy of the law to discourage litigation and to favor compromises of doubtful rights and controversies, made either in or out of court. [Citations.] Settlement agreements are highly favored as productive of peace and goodwill in the community, and reducing the expense and persistency of litigation." (*Fisher* v. *Superior Court* (1980) 103 Cal.App.3d 434, 440-441 [163 Cal.Rptr. 47], quoting *Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231, 235-236 [132 Cal.Rptr. 843], internal quotation marks omitted.) It is unquestionably in society's best interest for persons to resolve their disputes among themselves before the outbreak of costly and often bitter litigation. This interest does not cease upon the filing of a lawsuit. Once litigation commences, the presence of lawyers unfortunately sometimes tends to inhibit rather than

---

[2] Code of Civil Procedure section 283, subdivision 1, reads: "An attorney and counselor shall have authority: 1. To bind his client in any of the steps of an action or proceeding by his agreement filed with the clerk, or entered upon the minutes of the Court, and not otherwise."

foster an atmosphere conducive to settlement, as may well have been the case here. A rule which absolutely forbids litigants from entering into an out-of-court resolution of their case without the assent of their attorneys would countervail this state's strong policy in favor of settlement. Moreover, its implicit assumption that litigants are per se incompetent to resolve their dispute without the intervention of attorneys smacks of an elitism which may have been prevalent in days past but is no longer appropriate today. Where there are no elements of fraud, coercion, or overreaching and both parties, freely and with full understanding of their rights to advice of counsel, wish to negotiate a settlement without the involvement of their attorneys, there is no reason why the law should not permit them to do so. (See *Adams* v. *Adams* (1947) 29 Cal.2d 621, 624 [177 P.2d 265]; *Davidson* v. *Davidson* (1949) 90 Cal.App.2d 809, 819 [204 P.2d 71].)[3]

The case before us constitutes persuasive evidence supporting our conclusion. The 1988 agreement was negotiated at the home of a family member, not a law office or a courthouse. At Husband's request (and as had been the case on three prior occasions), the agreement was negotiated without the presence of the parties' counsel of record. A draft of the contract was prepared by their daughter and sent to Husband at least a month before it was signed. At Husband's behest, two pages of the agreement were modified and retyped. The agreement affirms the opportunity of each party to consult with his or her retained counsel before executing it, and Husband never denied that he did so. Other portions of the agreement manifest an unmistakable intention by the parties to settle their differences and enter into a binding agreement without the aid of their counsel of record. Under these circumstances, we see no policy reason why Husband should be permitted to repudiate the agreement merely because his attorney's signature was not affixed.

The court did not err in enforcing the settlement.

IV*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

[3] Significantly, in both *Younger* and, apparently *Wickander*, the attorneys for the parties seeking enforcement of the settlement circumvented their opponents' attorneys of record and negotiated directly with the other litigants without the consent of their counsel. These facts alone warranted the courts' refusal to enforce the settlements.

* See footnote, *ante*, page 1174.

## DISPOSITION

The judgment is affirmed.

Kline, P. J., and Benson, J., concurred.

A petition for a rehearing was denied May 30, 1991, and appellant's petition for review by the Supreme Court was denied August 15, 1991.