[No. G020260. Fourth Dist., Div. Three. Aug. 27, 1997.]

WILLIAM P. TANNER III, Plaintiff and Appellant, v.
GEORGIA L. TANNER, Defendant and Respondent.

**COUNSEL**

William P. Tanner III, in pro. per., for Plaintiff and Appellant.

Gibson, Dunn, & Crutcher, Robert W. Loewen and Thomas S. Jones for Defendant and Respondent.

**OPINION**

**SONENSHINE, Acting P. J.**—William P. Tanner III appeals a judgment awarding Georgia L. Tanner $120,867.10 in costs and attorney fees. He challenges the trial court's interpretation of a marital settlement agreement (MSA) provision and the amount of attorney fees awarded.

## I

William and Georgia's three-year marriage ended on September 22, 1992. Their MSA incorporated into the judgment of dissolution provided, in part, "William will pay all legal fees associated with this dissolution."

Two years later, William filed the underlying complaint seeking to set aside the MSA and the judgment, and an order to show cause asking the court to terminate the spousal support. In both matters he maintained he entered into the agreement because of an alleged misrepresentation made by Georgia.

The court denied William's request to terminate support and William dismissed the civil complaint with prejudice a few days before Georgia's Code of Civil Procedure section 437c[1] summary judgment motion was to be heard. Georgia then filed motions for costs and attorney fees under sections 1032 and 1033.5, subdivision (a)(10)(A) & (C). The court awarded her $116,021.25 in fees and $4,845.85 in costs. William appeals the attorney fee award.[2]

## II

■ A prevailing party, defined by section 1032, subdivision (a)(4) as "a defendant in whose favor a dismissal is entered," is "entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).) Attorney fees are included as costs when authorized by contract, statute, or law. (§ 1033.5, subd. (a)(10)(A), (B) & (C).) Georgia maintains she is entitled to fees pursuant to law and contract. She is wrong.

### ATTORNEY FEES AUTHORIZED BY LAW

Georgia maintains William is responsible for the attorney fees because the judgment of dissolution, long since final, is the controlling law. She misunderstands this aspect of the statute.

The Legislature amended section 1033.5 in 1993, permitting a court to award attorney fees as costs when authorized by law. No court has interpreted the meaning of "fees authorized by law," but a review of the prior case law and the amendment's legislative history is instructive.

---

[1] Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

[2] Although William's notice of appeal seeks reversal of the entire award, his argument goes only to the $116,021.25 in attorney fees. Therefore, his appeal for costs fails. "[W]here the notice of appeal specifies a judgment or order that is not challenged in appellant's opening brief . . . the appellate court may independently treat the omission as a 'partial abandonment' and dismiss the appeal sua sponte as to that particular judgment . . . ." (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 1996) ¶ 5:69, p. 5-20.)

Prior to the 1993 amendment, section 1033.5 allowed for the recovery of fees pursuant only to contract or statute. Many courts nevertheless awarded fees pursuant to the common fund and substantial benefit theories.[3] In 1993, the State Bar Conference of Delegates proposed Resolution No. 6-25-92 suggesting the "recategori[zation of those] attorneys' fees recoverable under a judicial precedent as a cost item . . . ." (State Bar Conf. of Delegates Res. No. 6-25-92, from the legis. bill file of the Sen. Com. on Judiciary on Assem. Bill No. 58 (1993-1994 Reg. Sess.).) Its purpose was to allow attorney fee awards based on case law to be recovered as costs. (Letter from Assemblyman Steven Peace to Governor Pete Wilson (Sept. 2, 1993) regarding Assem. Bill No. 58.) As Assemblyman Peace noted in his letter, the amendment did not change existing law, it simply codified it.

## III

### ATTORNEY FEES AUTHORIZED BY CONTRACT

Except as specifically provided by statute, "the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." (§ 1021.) Moreover, ". . . parties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." (*Xuereb* v. *Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341 [5 Cal.Rptr.2d 154]; see also *Moallem* v. *Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1831 [31 Cal.Rptr.2d 253].) With those principles in mind, we determine whether the parties intended to contractually obligate William for these fees. The short answer is no.

### THE AGREEMENT

Because the terms of the agreement are determinative, we review them in detail. Section 1 delineates William's spousal support responsibilities. Pursuant to section 2, William assumes liability for certain debts and both are assigned liabilities associated with the assets awarded to them. Each *indemnifies and holds the other harmless therefrom.*

Section 3 provides, inter alia, each party "*shall indemnify, defend (including attorneys' fees and costs) and hold the other free and harmless* from all . . . outstanding personal debts and obligations [incurred after the date of separation]." (Italics added.) Moreover, each party "warrants to the other,

---

[3]Courts also awarded attorney fees pursuant to the "private attorney general" doctrine. That theory was codified in 1977 as section 1021.5.

that he and she has not, and shall not . . . place or cause to be placed, any liens or encumbrances on any of the property awarded . . . . [I]n the event that either party does breach this warranty, *the Family Law Court shall retain jurisdiction to redress the aggrieved party and to award attorneys' fees, costs and interest* to the aggrieved party." (Italics added.) The next section, entitled "Tax Provisions," states, "[E]ach party *shall indemnify and hold the other harmless* from any and all . . . taxes, penalties and assessments [relating to property awarded to them]." (Italics added.)

Pursuant to section 5, Georgia is to select and have awarded to her any items located in William's residence except for objects of art owned by William before the marriage. Section 6, entitled "Further Instruments And Other Acts/Retention of Jurisdiction," provides, "The *Superior Court . . . shall retain jurisdiction over the executory provisions of this Judgment and shall further retain jurisdiction in this dissolution of marriage proceeding to issue any and all orders as are necessary and proper to carry out and enforce the provisions of this Judgment.*" (Italics added.)

Section 7, entitled "Miscellaneous," includes eight separate provisions. Only three are relevant here: (1) "Neither party shall incur any liability or obligation on which the other may be or is liable and *if any claim, action, or proceeding shall hereafter be brought against the other* seeking to hold the other liable on account of any debt, liability, or act, then each party *will defend the other against any such claim or demand, whether or not well founded, and each party will hold the other free and harmless therefrom*"; (2) "*The Family Law Court shall retain jurisdiction over all executory provisions contained herein*"; and (3) "*William will pay all legal fees associated with this dissolution.*" (Italics added.)

It is the last clause of section 7 to which the parties devote their attention. Georgia argues this clause obligates William to pay the fees relating to this subsequent civil action between the former spouses. We disagree. As William declared below, the parties intended his responsibility, pursuant to this provision, to extend only to fees incurred in the negotiation and preparation of the agreement and entry of the judgment of dissolution.

## RULES OF INTERPRETATION

An MSA is governed by the legal principles applicable to contracts generally. (*In re Marriage of Hasso* (1991) 229 Cal.App.3d 1174, 1180 [280 Cal.Rptr. 919].) "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs [its]

interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.]" (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253].)

Georgia maintains where contract language is explicit and does not lead to absurdity, intent is to be evidenced from the written terms of the instrument, not the parties' subjective intent.[4] Therefore, she maintains, William's "belated characterization" of its meaning is irrelevant. She contends this is particularly true when one looks to Webster's New Collegiate Dictionary (10th ed. 1994) at page 70, which defines "associated" as "closely connected" or "closely related." She also explains the "Agreement could have but *does not* provide that '[William] shall bear all legal fees associated with the preparation of this document.' " (Original italics.) She states, "The fact that the Agreement provides for the payment of all fees associated with the *dissolution*, a general term relating to the entire process, as opposed to those fees merely giving rise to the Agreement, demonstrates that the reach of the provision is not so limited." (Original italics.) Finally, she maintains her interpretation comports with the MSA's overall generous tenor and is consistent with her desire to terminate potential liabilities resulting from their marriage.[5]

Georgia's position might be plausible if the clause upon which she relies were the only attorney fee reference.[6] It is not, and "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.)

---

[4]Georgia is forced to claim this agreement is unambiguous because the only evidence before the trial court was William's declaration.

[5]Georgia explains, "It is eminently logical that [she], who suffers from a learning disability and was, at the time of the Agreement, unemployed, would seek to have *all* expenses relating to the divorce covered by [William], a partner at a large law firm. [She] certainly would not want to later be thrown into litigation regarding which expenses were arguably related to the preparation of the Agreement and those that were not. It makes perfect sense that [she] would seek and secure a broad attorneys' fee provision to ensure that her potential liabilities for the marriage had come to an end . . . ." (Original italics.)

[6]Georgia relies on *Xuereb* v. *Marcus & Millichap, Inc.*, *supra*, 3 Cal.App.4th 1338, *Childers* v. *Edwards* (1996) 48 Cal.App.4th 1544 [56 Cal.Rptr.2d 328], and *Lerner* v. *Ward* (1993) 13 Cal.App.4th 155 [16 Cal.Rptr.2d 486], which held specific contract provisions entitled the prevailing party to fees in tort actions arising from contracts. In those cases the controlling provisions suggested future litigation. In *Xuereb*, the contract provided: "If this Agreement *gives rise* to a lawsuit or other legal proceeding between any of the parties hereto, . . . the prevailing party shall be entitled to recover actual court costs and reasonable attorneys' fees . . . ." (*Xuereb* v. *Marcus & Millichap, Inc.*, *supra*, 3 Cal.App.4th at p. 1340, italics added.) In *Childers*, the contract provision stated: " 'In any legal action, proceeding or arbitration *arising out* of this agreement . . . the prevailing party(s) shall be entitled to reasonable attorney's fees and costs.' " (*Childers* v. *Edwards*, *supra*, 48 Cal.App.4th at p. 1548, italics added.) And, in *Lerner*, the provision allowed recovery of attorney fees to the prevailing party

The MSA includes specific attorney fee references delineating who is responsible for fees, in which situation, and whether the fees are recoverable under the family law statutes or contract. Pursuant to the indemnification[7] and third party liability clauses, either party could be responsible for fees arising from future events. Accepting Georgia's interpretation would make William responsible for all actions associated with the dissolution—past, present, and future, thus rendering these other provisions meaningless and irrelevant. Such interpretations are to be avoided. (*AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at pp. 827-828; *City of El Cajon* v. *El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 71 [56 Cal.Rptr.2d 723].) Conversely, William's construction allows each provision to be carried into effect, in accordance with Civil Code section 1643 which provides, "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."

The judgment is reversed as to attorney fees awarded.[8] In all other respects the judgment is affirmed. William shall recover his costs on appeal.

Crosby, J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied September 17, 1997.

---

" '[i]n any action or proceeding *arising out of* this agreement . . . .' " (*Lerner* v. *Ward, supra,* 13 Cal.App.4th at p. 159, italics added.)

Those cases are inapt. This controlling clause does not suggest future litigation. And as explained above, this is especially true when it is read in light of the entire agreement.

[7] There is a split of authority as to whether a prevailing party is entitled to attorney fees pursuant to an express indemnity provision. (*Otis Elevator Co.* v. *Toda Construction* (1994) 27 Cal.App.4th 559, 565-566 [32 Cal.Rptr.2d 404] [interpreting Civ. Code, § 2778, subd. 3]; see also *Hillman* v. *Leland E. Burns, Inc.* (1989) 209 Cal.App.3d 860, 869 [257 Cal.Rptr. 535].)

[8] Because we reverse the judgment, we need not address William's challenge to the reasonableness of the amount of attorney fees awarded.